UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CHARLES RANDOLPH,<br><br>    Plaintiff,<br><br>vs.<br><br>THE STATE OF NEVADA, ex. rel.,<br>NEVADA DEPARTMENT OF<br>CORRECTIONS, et al.,<br><br>    Defendants. | Case No.:   3:13-cv-00148-RCJ-WGC<br><br>**ORDER** |

This proceeding arises out of the alleged electronic monitoring of a prison inmate's telephone calls with his attorney. Pending before the Court is Plaintiff's Motion for a Temporary Restraining Order ("TRO") and/or Preliminary Injunction (ECF No. 109). For the reasons given herein, the Court grants the motion.

**I.      FACTS AND PROCEDURAL HISTORY**

In this case, pro se Plaintiff Charles Randolph, a death row inmate within the Nevada Department of Corrections ("NDOC"), alleges that his confidential telephone conversations with his attorney, James Colin, Esq., were "repeatedly, surreptitiously, and intentionally monitored and recorded" without a court order or consent. (Compl., ECF No. 7, at 10). Plaintiff argues that a recent incident of such illegal conduct warrants a TRO and/or preliminary injunction.

///

### A.      Plaintiff's Complaint

Plaintiff sued the State of Nevada, on relation of the NDOC; James "Greg" Cox, director of NDOC; E.K. McDaniel, the warden of the Ely State Prison ("ESP"); Renee Baker, associate warden of programs and acting warden of ESP; and Pam Del Porto, inspector general of NDOC (collectively "Defendants"). (*Id.* at 7–9). Plaintiff also sued Century Link Sales Solutions, Inc. ("Century Link") and Embarq Communications, Inc. ("Embarq"), telephone service providers contracting with the NDOC. These two parties have since been dismissed from this case.

Plaintiff's complaint arises out of the following facts. Plaintiff alleged that as far back as March 2008, Plaintiff provided Defendants with an "Allowed Calling List Request" form which listed James A. Colin, Esq., Plaintiff's attorney, who was admitted to practice law in Nevada, his work phone number, (702) 521-6316, as the individual and phone number Plaintiff intended to receive confidential communications from. (*Id.*). This form was maintained in Plaintiff's Institutional File, or I-File, and was available to Defendants upon their request. (*Id.*). Between March 2008 and April 1, 2011, Plaintiff telephonically entered the phone number (702) 521-6316 into Century Link's and Embarq's legal database and was approved. (*Id.*). Plaintiff reasonably believed his legal communications were private and did not consent to any future monitoring, recording or interception, eavesdropping, wiretapping, or listening to Plaintiff's telephone calls to Mr. Colin. (*Id.* at 14). A communication made by an inmate is confidential if it is made to an attorney who has been admitted to practice law in any State. (*Id.* at 12). NDOC Administrative Regulation 718 states that department staff are responsible to know and comply with this regulation. (*Id.*). The regulation also states that telephone calls, except those approved between an inmate and his attorney, must be monitored and/or recorded. (*Id.* at 13).

"On April 2, 2011, while engaged in legal communication with Mr. Colin, Mr. Colin and Plaintiff were abruptly notified by Defendant Century Link's and Embarq's computer-voice operating system, 'this call is being recorded.'" (*Id.*). "Immediately upon hearing such" message, Mr. Colin and Plaintiff were "both shocked, frustrated, in disbelief, and chilled by this message, and Plaintiff was obstructed and prevented from further discussing significant and important appellate issues, strategies, and legal matters that were awaiting briefing to the Nevada Supreme Court, and Mr. Colin did need Plaintiff's consent and consideration to further proceed." (*Id.*).

Plaintiff alleged that he and his attorney tried repeatedly to get Defendants to stop monitoring their calls. These attempts included submitting an "Inmate Request Form" to Baker that went without response, (*id.* at 14); submitting an emergency grievance which was denied, (*id.* at 15); initiating NDOC's Inmate Grievance Procedure, (*id.* at 15); and sending a letter from Colin to McDaniel requesting that the unlawful activity cease, (*id.* at 16). Defendants did not stop monitoring Plaintiff and Colin's calls until over two months after Plaintiff and Colin discovered their calls were being monitored. (*See id.* at 20).

The complaint alleged five causes of action. (*Id.* at 21–25). In the first cause of action, Plaintiff alleged deprivation of his First Amendment right to free speech, pursuant to 42 U.S.C. § 1983 against McDaniel, Baker, Cox, and Del Porto. (*Id.* at 21). In the second cause of action, Plaintiff alleged deprivation of his Fourth Amendment rights, pursuant to 42 U.S.C. § 1983, against McDaniel, Baker, and Cox. (*Id.* at 22). In the third cause of action, Plaintiff alleged violation of Title III of the Omnibus Crime Control and Safe Street Act of 1968, 18 U.S.C. § 2520, against McDaniel, Baker, Cox, Del Porto, Century Link, and Embarq. (*Id.* at 23). In the fourth cause of action, Plaintiff alleged a state tort of negligent supervision/training pursuant to NRS §§ 41.031(2), 41.0322, 41.130, and 209.243 against State of Nevada ex. rel. NDOC. (*Id.*). In the fifth cause of action, Plaintiff alleged a state tort violation of Article I, Section 18 of the

Nevada Constitution pursuant to NRS §§ 41.031(2), 41.0322, 41.130, and 209.243 against State of Nevada ex. rel. NDOC. (*Id.* at 25).

### B. Recent Allegations of Misconduct

To support his motion for a TRO and/or preliminary injunction, Plaintiff asserts that Defendants illegally monitored a telephone call with his attorney on May 15, 2014, pointing to a discovery response from Century Link as evidence of this allegation. The discovery response was a document that included a May 15, 2014 notes entry by a Century Link employee, Debra Lambe. (*See* Mot. TRO and/or Prelim. Inj. Ex. 2, ECF No. 109, at 17). The entry stated "I listened to this call to verify that it was the inmate registering an attorney number. Verification is complete." (*Id.*). Plaintiff asserts the call referenced in Lambe's notes entry was one that took place between Plaintiff and Colin, his attorney. Based on this recent alleged illegal conduct, Plaintiff seeks a TRO and/or preliminary injunction to enjoin Defendants from monitoring calls with his attorney until an evidentiary hearing can be held. Plaintiff requests an order from this Court requiring Lambe to be examined at the hearing.

## II. LEGAL STANDARD

To obtain a temporary restraining order Under Fed. R. Civ. P. 65(b), a plaintiff must make a showing that immediate and irreparable injury, loss, or damage will result to plaintiff without a temporary restraining order. Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001) ("The standard for issuing a preliminary injunction is the same as the standard for issuing a temporary restraining order."). The temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a

hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974).

The Court of Appeals in the past set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

The Supreme Court recently reiterated, however, that a plaintiff seeking an injunction must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 555 U.S. 7, 19-23, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test). The Court of Appeals has recognized that the "possibility" test was "definitively refuted" in *Winter*, and that "[t]he proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374) (reversing a district court's use of the Court of Appeals' pre-Winter, "sliding-scale" standard and remanding for application of the proper standard).

A Court of Appeals ruling relying largely on the dissenting opinion in *Winter* parsed the language of *Winter* and subsequent Court of Appeals rulings and determined that the sliding

scale test remained viable when there was a lesser showing of likelihood of success on the merits amounting to "serious questions," but not when there is a lesser showing of likelihood of irreparable harm. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). *Cottrell* presents some difficulty in light of *Winter* and prior Court of Appeals cases. To the extent *Cottrell*'s interpretation of *Winter* is inconsistent with *Selecky, Selecky* controls. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (holding that, in the absence of an intervening Supreme Court decision, only the en banc court may overrule a decision by a three-judge panel). In any case, the Supreme Court stated in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citing *Munaf v. Geren*, 553 U.S. 674, 128 S. Ct. 2207, 2218-19, 171 L. Ed. 2d 1 (2008); *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982)) (emphases added). The test is presented as a four-part conjunctive test, not as a four-factor balancing test, and the word "likely" modifies the success-on-the-merits prong in exactly the same way it separately modifies the irreparable-harm prong. In rejecting the sliding-scale test, the *Winter* Court emphasized the fact that the word "likely" modifies the irreparable-injury prong, *see id.* at 22, and the word modifies the success-on-the-merits prong the same way, *see id.* at 20. In dissent, Justice Ginsburg opined that she did not believe the Court was abandoning the rule that it was permissible to "award[ preliminary injunctive] relief based on a lower likelihood of harm when the likelihood of success is very high." *Id.* at 51 (Ginsburg, J., dissenting). But Justice Ginsburg, like the majority, did not address whether she believed relief could be granted when the chance

of success was *less than* likely. A "lower likelihood" is still *some* likelihood. We are left with the language of the test, which requires the chance of success on the merits to be at least "likely."

In summary, to satisfy *Winter*, a movant must show that he is "likely" to succeed on the merits. According to a layman's dictionary, "likely" means "having a high probability of occurring or being true." Merriam—Webster Dictionary, http://www.merriam-webster.com/dictionary/likely. Black's defines the "likelihood-of-success-on-the-merits test" more leniently as "[t]he rule that a litigant who seeks [preliminary relief] must show a reasonable probability of success . . . ." *Black's Law Dictionary* 1069 (10th ed. 2014). The Court must reconcile the cases by interpreting the *Cottrell* "serious questions" requirement to be in harmony with the *Winter/Selecky* "likelihood" standard, not as being in competition with it. "Serious questions going to the merits" must therefore mean that there is at least a reasonable probability of success on the merits. "Reasonable probability" appears to be the most lenient position on the sliding scale that can satisfy the requirement that success be "likely."

Additionally, under the Prison Litigation Reform Act, preliminary injunctive relief with respect to prison conditions must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

## III.   ANALYSIS

Plaintiff bases his need for preliminary injunctive relief on the fact that Defendants recently monitored a call between Plaintiff and Colin. Plaintiff relies on a discovery response from Century Link to support this contention. (*See* Mot. TRO and/or Prelim. Inj. Ex. 2, ECF No. 109, at 17). The discovery response was a document generated by Century Link's phone system that contained an "Inmate Notes" section. (*Id.*). The Inmate Notes section included an entry by a Century Link employee, Debra Lambe, dated May 15, 2014 and in referenced to a "CSN"

number of "47213047" and phone number of "(702) 521-6316." (*Id.*). The entry stated that "I listened to this call to verify that it was the inmate registering an attorney number. Verification is complete." (*Id.*). Plaintiff asserts the call referenced in Lambe's notes was one that took place between Plaintiff and Colin on May 15, 2014. Plaintiff claims Lambe's notes entry is evidence of Defendants' improper monitoring of Plaintiff's confidential calls with his attorney, thus requiring preliminary injunctive relief.

Defendants assert that Plaintiff misunderstands the discovery received from Century Link. According to Defendants, Lambe's entry references an automated attorney registration call made by Plaintiff on May 3, 2011, not a call between Plaintiff and Colin. To support Defendants' explanation, Century Link filed a responsive document to Plaintiff's instant motion with a declaration by Lambe, attesting to the truth of the facts contained therein. (*See* Response to TRO and/or Prelim. Inj., ECF No. 113). Lambe's declaration includes an exhibit of a "CallFinder" log from 2011 that shows a call with a CSN number of 47213047 on May 3, 2011. (Lambe Decl., ECF No. 113, at 11). This CSN number matches the number referenced in Lambe's May 15, 2014 notes entry. As Lambe explains:

> "On May 15, 2014, as a result of inquiries about discovery promulgated by Mr. Randolph in this case, I listened to the May 3, 2011 recording of Mr. Randolph's attempt to register 702-521-6316. I listened to the recording to verify that, as reflected on our records, the call was only a registration using the telephone system's automated features."

(*Id.* at 8). She also asserted that Plaintiff made two calls to the (702) 521-6316 number on May 15, 2014, but that neither call was recorded or listened to. (*Id.*).

Defendants assert they have not recently and are not currently improperly monitoring Plaintiff's privileged phone calls with his attorney. However, assuming Plaintiff could show likelihood of success on the merits and irreparable harm, i.e. the reasonable probability that Defendants are improperly monitoring Plaintiff's privileged calls with his attorney, the Court

would find preliminary injunctive relief warranted. Therefore, the Court grants Plaintiff's motion in part and enjoins Defendants from doing that what Defendants steadfastly assert they are not doing, in any case.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Temporary Restraining Order and/or Preliminary Injunction (ECF No. 109) is GRANTED IN PART.

IT IS FURTHER ORDERED that Defendants are PRELIMINARILY ENJOINED from listening to Plaintiff's privileged attorney-client communications from any phone number. Defendants are not enjoined, however, from listening to non-privileged communications from any phone number.  If permitted by law or regulation, Defendants may listen to any of Plaintiff's conversations from any phone number until it is clear that the conversation is privileged, at which point monitoring must cease.

IT IS SO ORDERED.

Dated this 21st day of October, 2014.

_____
ROBERT C. JONES
United States District Judge